The first case on the call of the docket is Agenda No. 3, Case No. 131240, People v. Shepherd. Counselor, are you ready to proceed? Please proceed. Good morning, Your Honor. I'm Demetri Golkis. I'm from the Office of the State Appellate Defender, and I represent Christian Shepherd. May it please the Court, Counselor? Your Honor, this case presents a single legal question. When does a defendant procure a number to commit murder for purposes of the offense of solicitation of murder for hire? This Court should hold that in order for a defendant to do so, he must actually obtain someone who is willing to commit murder for him. Now, in this case, it's undisputed that Daniel Robinson, the solicitee, was never willing to commit murder for Christian Shepherd. Therefore, Mr. Shepherd did not procure him to commit murder, and he did not commit the offense of solicitation of murder for hire. Therefore, he respectfully requests that you reverse his convictions for that offense. My plan today is to make four points. First, the term procures in the murder for hire statute means obtains, and it is unambiguous. Second, the unilateral theory of agreements from conspiracy law does not apply to the offense of solicitation of murder for hire. Third, procures does not mean hires, enlists, or arranges, as the State argues. And fourth, the State erroneously contends that the procurement element must be assessed from the perspective of the defendant. Counsel, I can't help but wonder, what does it look like, what would it have to look like in order for the State to have met its burden, according to your position in this case? The State would need to show that Mr. Shepherd, well, the State would need to show that Mr. Robinson was willing to commit murder for Mr. Shepherd. And that's really the only thing that would need to change, because we know from a record that Mr. Shepherd not only discussed consideration when somebody actually made payments. So the thing that would need to change would be Daniel Robinson not faking an agreement, but he's actually willing to commit the murder. What would the evidence look like in that instance? Well, I think in general, in this type of case, evidence would look similar to the type of evidence the prosecution would present in the conspiracy case. You have to present evidence pertaining to the state of mind of both the defendant and the person procured. In this case, we have an overhear. Now, we had that overhear because Mr. Robinson was not willing to commit murder. But you could have evidence, for example, in another case of the person procured being overheard and agreeing to commit murder. You could have him going out, buying a weapon. You could have him not going to the police and reporting it. You could have him actually accepting money. You could have him doing research on the target, looking online, seeing where the person lives, maybe seeing outside the person's home. Things like that. So there's a variety of ways that the state of mind of the person procured can be established. Mr. Dolphus, what if the person who was being solicited initially agreed and then later changed his mind and went to the police and revealed the scheme? Would that be sufficient? How would that change it? As long as that initial agreement is genuine and you have the discussion of consideration, money or something of value, which is something that the statute requires, that's enough for the defendant to be guilty of solicitation of murder or hire, even if the person procures, later changes his mind and goes to the police. Are we supposed to ignore the fact that money changed hands in this case? You're not ignoring it. That is one requirement. But another requirement is procurement. And the plain meaning of procure is obtained. That is the only definition of procure that makes sense in the context of the statute. So it's unambiguous. So the payment of money doesn't indicate that maybe they had an agreement to do something? That's why the money was transferred to Mr. Robinson? He thought he had an agreement. Is that correct? The defendant thought he had an agreement, but the plain meaning of procure forecloses unilateral agreements. Procure means to obtain. So under the plain meaning of procure, you have to obtain someone who is actually willing to commit murder for you. If you don't do that, there's no procurement. And it doesn't matter if the person's faking, you don't have procurement. The plain meaning of procurement forecloses application of a unilateral agreement. Counsel, what do you say to the argument that the terms contract agreement and understanding refers to the defendant's subjective belief that he has an agreement? If he believes that he has an agreement, regardless of the other party's belief, subjectively, would that satisfy the statutory requirement? No, Your Honor. Again. Why not? The plain meaning of procure forecloses it.  How so? Explain that. Procure means to obtain. It's unambiguous. So in order to obtain someone to commit murder, common understanding is you have to obtain someone who is actually willing to do it for you. If you're obtaining that you have procured the person, isn't your subjective belief that you have procured whatever it is you're trying to procure, isn't that enough? No, Your Honor. And if not, why not? No, Your Honor, because that's not the way the legislature wrote the statute. Legislature did not write a person believes he has procured a number to commit murder. It said the defendant procured a number to commit murder. Does the statute speak to the beliefs of the person who has been procured, so to speak? Does the statute tell us that we're to look to their state of mind? Yes, you have to. What does the statute say that indicates that? The word procures. And when it's charged, you have also five alternative elements in that pursuant to clause. So when the state alleges a contract, understanding, or agreement, that also signifies that you have to look to the state of mind of the person procured. Because even if, as in this case, when the state alleges there's an agreement, the plain meaning of agreement forecloses unilateral agreements. A unilateral agreement is not actually an agreement. It's a legal fiction. Okay? In order to have an agreement, you need two people to actually agree on something. So let's focus on the word understanding, not agreement. Understanding. If the defendant has a subjective, if he understands or believes that he has procured, since you seem to focus on that word, that he has procured someone to commit this crime, why isn't that sufficient? Because the legislature did not write the statute to make a defendant's belief enough. It requires actual procuring. Where does the statute say that, counsel? I mean, the statute says, a person commits the offense of solicitation of murder for hire when, with the intent that the offense of first-degree murder be committed, he or she procures another to commit that offense pursuant to any contract, agreement, understanding, command, or request for money or anything of value. I can't say this answer any other way, but those five alternative elements are separate from the meaning, separate from the procurement element. I understand that's your argument, but I'm just asking you to support that argument. The plain meaning of procure means obtain, and, you know, if, let's say I want Justice Overstreet's robe. I like his robe. I say, Justice Overstreet, can you give me your robe? He says, sure, Mr. Goldfuss, I'll give you my robe, $500. He's like, okay, that sounds great. But I've done nothing to earn that robe. I'm not a justice, and he has no intention of giving me that robe. Well, if I told you, I would. Under the plain meaning of procure, which means obtain, have I procured his robe? No, I haven't. So we're talking plain meaning. But isn't the belief of the procurer what we're looking at here? And if someone believes that they've procured it, if you believed that Justice Overstreet was going to give you the robe in exchange for $500, and you, in fact, pay the $500, and the fact that it doesn't show up until, you know, while you're waiting for the result, you still have the belief that it's been procured, correct? I have that belief, but I have not procured it. And I think it makes sense to look at this practically. If I haven't procured it, if I haven't procured someone to commit murder, I haven't done anything different than ordinary solicitation. The danger to society has not increased. It sounds like you're saying you don't like the way the legislature wrote the statute, because in how you answered what Justice O'Brien asked you, as long as you believe that you have procured the robe, you've completed the whole solicitation process. The fact that under your explanation, unless the murder actually takes place, then this statutory provision never applies. And that can't be what the legislature intended. That's not my argument, Your Honor. I'm not saying that the murder has to occur. It sounds like that's what you're saying. That's not what I'm saying. I'm saying that Mr. Shepard simply needed to obtain someone who was willing to commit murder for him. Not that a murder needed to happen, and I'll be even more forthright. He didn't have to agree that a murder would happen. Because the statute doesn't even require an agreement. There can be an agreement, but when you look at that pursuant to language, you can have procurement pursuant to a request for money. Understanding, Counselor, and the question is whose understanding are we talking about? Is it the procurer or the procuree? It can require an understanding if it's charged that way. And if it is charged that way, then you need an understanding of both parts. And your argument, part of your argument is certainly the procurer. And I think that the natural meaning of the word procure, I think of hire. You're saying that's just not a correct definition. No, that's not a definition for procure. The state pulls that definition from a thesaurus. So it has a similar meaning, but it's not the definition of procure, and it's not procure's plain meaning. And let's take that a step further. Let's think about what does hire mean. Hire means coming to an agreement with someone to perform a service for a set sum of money. If you interpret procure to mean hires, that would actually render the remaining language of the subsection A of the statute superfluous because the legislation would essentially be saying the defendant agrees with the number to commit murder for a set sum of money pursuant to an agreement or understanding for money. So you would be creating a redundancy which violates the rules of statutory construction. So you can't read the statute like that. Would it be fair to read the statute and the differences in the levels of solicitation? The solicitation itself is regarding an offense other than first degree murder. Solicitation of murder is soliciting someone else to commit first degree murder, but murder for hire solicitation adds the element in exchange for something of value. Would that be a fair reading rather than to focus on procure? Not entirely, Justice O'Brien, because I think if that's how you want to read it, then if the legislature just wanted to make the gravamen of the offense of solicitation of murder for hire to be about money, so to speak, then the statute would have been written differently. The legislator would have simply taken the solicitation of murder statute and added an element about money. But they didn't do that. They created a statute that was much different, and they made the act as raised procurement. So gravamen of the offense is procurement, the act of obtaining someone who is actually willing to commit murder for you. And when that happens, that is what actually moves the needle forward in a defendant's desire to commit a murder. Simply offering someone money or even paying someone money does not guarantee procurement, as this case shows. So is there any other statute that would criminalize that kind of behavior where someone has the intent to have someone killed and take some steps toward that, find someone who indicates that they will, in fact, commit that crime of murder, but let's say is really an undercover police officer or something like that? Is there any other statute that criminalizes that kind of conduct? Yes, solicitation of murder. Class X, max 30 years in prison, a serious offense, which is what Mr. Schechter committed. It's a lesser inclusion. So Mr. Schechter's conduct is covered here. Absolutely. So I think, considering all the questions I've received, I think it's important to make the point that procuring someone to commit murder is not the same thing as agreeing with someone to commit murder. It's two different things. Procuring means I've obtained someone who is willing to do it for me, but that's not necessarily agreeing. And when you look at the language of the statute, an agreement is not actually required. The payment of money is not actually required. Offering or promising money is not actually required. Now, even if you were to interpret procures in the way that the state argues, let's say you interpret procures to mean arranges in the sense that arrange means to plan. That wouldn't work just like hire doesn't work. Because if you say procures means arrange, as in to plan, that would make solicitation of murder to hire a less serious offense than general solicitation of murder because the act of planning for another person to commit murder is less serious conduct than actually soliciting someone to commit murder. So arrange doesn't make sense. Even if you interpret procures to mean any of the definitions that the state has offered, the evidence at trial is still insufficient to prove that Mr. Shepard procured Daniel Robinson because Mr. Shepard did not hire, enlist, or arrange for him to commit murder because Daniel Robinson was never willing to help him commit murder. So really what the issue is in this case with the argument that the state needs for you to accept to get Mr. Shepard's convictions affirmed is the argument that the procurement element must be assessed from the perspective of the defendant. And that makes no sense for two reasons. First, it's not consistent with the plain language of the statute. Second, again, our legislature did not write that a defendant believes he has procured someone to commit murder. Our legislature procures in order to commit that offense. Did Mr. Shepard attempt to persuade Mr. Robinson to commit a crime? And if so, why isn't that enough? He did attempt to persuade him to commit a crime. I would agree with that. But an attempt to persuade is simply ordinary solicitation of murder. In order to move beyond that, to get to solicitation of murder for hire, the person you attempt to persuade must actually be willing to do it for you for a price, money or something to top it. And Daniel Robinson was never willing to do it. Therefore, it's just ordinary solicitation of murder because the procurement element is not met and the agreement element is not met because a fake agreement is not actually an agreement pursuant to the plain meaning and common understanding of what an agreement is. Unilateral agreement is a legal fiction. But isn't that all that is necessary for solicitation? Isn't it a unilateral agreement? For ordinary solicitation, absolutely. But this is not ordinary solicitation. This is solicitation of murder for hire. That requires procurement, actually finding someone who will commit murder for you, who is willing to commit murder for you. He certainly found Mr. Robinson, correct? He found Mr. Robinson, but Mr. Robinson was not willing to commit murder for him, even for one second. So there's no procurement. Are we reading into the statute language that would be akin to the defendant has to procure someone who has the intent to commit the murder? No. I think that would be reading an element of agreement, which isn't necessary unless the state charges it. And I think what procure means is obtaining someone who's willing to do it, but they don't necessarily agree to do it. They're just willing to do it. They still have to haggle over what that consideration is, and they have to come to an agreement on that for you to say, oh, there's an agreement to commit murder. So my answer to your question is no. One last point, and that's that we don't convict people of crimes based on what they thought they did. We convict people of crimes based on what they actually did. So, for example, when someone hasn't been killed, we don't convict that person of murder just because they thought they killed that person. Therefore, when the defendant hasn't actually obtained someone to commit murder, hasn't procured someone to commit murder, found someone willing to do it for him, we don't convict that person of solicitation of murder for hire just because the defendant thought that happened. That's not how our criminal justice system operates. Therefore, Christian Shepard respectfully requests that you reverse his convictions of solicitation of murder for hire because he did not commit that offense, and if the court has any further questions, I'm happy to answer them. Thank you, counsel. Thank you. Counsel, you may proceed. Good morning. May it please the court. Counsel, I'm Assistant Attorney General Erin O'Connell on behalf of the people of the state of Illinois. Even looking at the word procure in isolation, that word means to get or obtain. That only gets us so far because it doesn't answer the question of what a defendant needs to get or obtain to violate the statute. You have to look at the word procure in its full context in this statute and the overarching statutory scheme, and I'd like to emphasize at least four signals of the General Assembly that it is only the defendant's intent that matters under the statute. The first is that the statute only requires that it be defendant's intent that murder be committed. Second, it requires that the procurement occur pursuant to a contract, agreement, understanding, command, or request for money. Several of those words require only a unilateral understanding, and I would note this case was charged as pursuant to a contract or agreement, and the people proved that there was an actual written contract in this case. Within the people's exhibits, there was assigned a document in which defendant had agreed to provide money for services rendered to Mr. Robinson. Even if this court were to look at this under contract principles, a contract was entered into, it is objective manifestation of intent that creates the contract. It would be no defense if this were a breach of contract case that Mr. Robinson said he would do it but didn't mean it. Ordinary principles of contract say that by signing a document and by getting paid, Mr. Robinson had entered into a binding agreement to commit the offense of first degree murder. So this is actually a fairly rare case because we do have documentation of this understanding between the parties in the record here. The third signal is that the legislature created this as a solicitation offense, and it created this as an offense separate from conspiracy. I understood defendant's argument this morning to be that essentially, his argument requires the state to prove conspiracy, but that would render this statutory provision meaningless. And solicitation has a well-established judicial meaning, and this comes to my fourth point of legislative acquiescence. There is a long line of case law from both this court and the appellate court interpreting solicitation to require only a unilateral intent on the part of the defendant. Four years after this statute was enacted in People v. Breeden, the Illinois appellate court specifically held that the solicitation of murder for higher statute requires only unilateral intent because to read it otherwise would render it meaningless and reduce it to a conspiracy when clearly this was intended to be an entirely separate offense. I ask you, we know there are two separate solicitation for murder sections of the statute, correct? Yes. And so if we could break that out. The first one, solicitation of murder, says a person commits the offense of solicitation of murder when he or she commits solicitation with the intent that the offense of first-degree murder be committed. And then another section describes that conduct as he or she commands, encourages, or requests another to commit that offense. That's one. That's solicitation for murder. But now we're talking about a separate statute, solicitation of murder for higher. And there are additional elements in that statute that we've been talking about that that's the part where it says not just that there is this solicitation reaching out to someone to command or encourage them to do an act, but these other elements of procuring someone pursuant to a contract agreement understanding command or request for money or any other value. So how do the two statutes work? How do we break them out in terms of this idea of who has to have the state of mind? Why do we have two different statutes? So there are two differences in the statutes. The first is that solicitation of murder for higher clearly requires that there be money or something of value offered in exchange for the commission of the murder. And then second, the solicitation of murder for higher does use the word procure, which solicitation of murder does not. And so procure does convey some level of success, but the question is has that requirement been met when the person says that they're going to commit the murder and even in this case says that they have committed at least one of the murders and is going to commit the remaining four. Is that enough for the procurement element to be met? So there are two important differences between the two statutes. So there does have to be some level of understanding or communication between the two parties. There has to be something that the procuree is communicating back to the defendant to meet the solicitation of murder for higher. So here we have that element met in that Robinson told him that he had started committing the murders and was going to continue doing so. And the defendant clearly believed that that was happening and signed over tens of thousands of dollars in credit card funds. He signed over his car and made additional payments to his commissary account. So those steps were transformed from mere solicitation to solicitation of murder for higher. And the only difference is something of value or money being exchanged? Or is there more? There's clearly a different language. I do agree that it requires some sort of communication on the part of the person being procured that would communicate to the defendant that he's willing to commit the crime. So because procure, it brings in his – defendant has to understand that he has procured someone to commit the murder. So a lot of the hypotheticals that defendant has given don't have this sort of apparent meeting of the minds. But where the person has said that they are willing to commit the murder and defendant believes that to be the case and fully intends for the murder to be committed, the procurement element has been met. And it's no defense that this person was merely lying when he said that. And that's just general contract principles. It's no defense to a contract to say I didn't mean it when I said I would do that. So there is some level of success required by the procurement statute that's not in the solicitation of murder statute. And that's what makes defendant's commission of this crime so much more serious. Defendant – there was so much communication between the two. He had provided a map of the victim's house. He had provided physical descriptions of the intended victims. And he had signed over everything that he had promised to Robinson in the hopes that these murders would be committed. And he even – there was a ruse where the police even told him, you know, Franklin Bryant has gone missing. Do you know anything about that? And he said no. I mean, the intent there was to communicate to defendant that he had already had some success. And yet their communications continued. There were continued recorded conversations where defendant tried to get Robinson to continue killing the victim of his sexual abuse, the victim's mother, the police officers who investigated that crime. So those manifestations of Robinson's intent communicated to defendant clearly satisfied the procurement element and were clearly what the General Assembly intended to criminalize through the solicitation of murder for hire statute. So unless this court has further questions, we would ask that this court affirm the defendant's convictions for solicitation of murder for hire. But in the event that this court were to disagree, then we ask that this court remand for sentencing on the unchallenged convictions of solicitation for murder. Thank you, counsel. Will there be any rebuttal?  Your Honor, the legislature intended a very simple tier scheme. When you ask someone to commit murder for you and you want that murder to be committed, that's solicitation of murder. When you do that and you obtain someone who's actually willing to do it for you, that's solicitation of murder for hire, assuming there's a discussion of money or something of value involved. I'm not saying that conspiracy means the same thing as solicitation of murder for hire. Procuring someone to do something and agreeing with someone to do something are two different things. Both solicitation offenses are more severe than conspiracy because they involve a corruption of a number of individuals. Conspiracy doesn't require that. It just requires two people to agree on something and then overact. So they're different offenses. One doesn't necessarily turn into the other. With respect to legislative acquiescence, I have yet to hear the state argue or any court find that the word procures is ambiguous. Yet the state and the appellate court continue to go to legislative acquiescence. That's not appropriate because you're looking outside the text of the statute to support your position. That violates the rules of statutory construction. And on top of that, the one case, Bretton, that found that the unilateral theory of agreement for conspiracy law, something that we don't even apply in the state for our conspiracy statute, they came to that conclusion based on a misreading of this court's decision in Foster. In Foster, the issue was whether the unilateral theory of agreement applies to conspiracy law. And this court says, no, it doesn't because we have a solicitation statute that embraces the unilateral theory of agreements. Referring to ordinary solicitation, Bretton then misreads that and says, well, for purposes of solicitation of murder for hire, the unilateral theory applies because the court in Foster said so when it referenced the solicitation statutes. But that was wrong because at the time this court decided Foster, solicitation of murder for hire didn't even exist. This court in Foster was not talking about solicitation of murder for hire. It was just talking about ordinary solicitation embracing unilateral agreements. Solicitation of murder for hire requires something more. It requires procurement, obtaining someone who's willing to commit murder for you. If the legislature wanted people to be convicted of solicitation of murder for hire on the basis that they believed they have found someone to commit murder when they never actually did, the legislature would have written the statute that way. It did not. It requires actual procurement. And while we generally do not convict people on the basis of what they believe they have done, there are rare exceptions, and we do have statutes that explicitly say that you can convict someone of a crime on the basis of what they believe they did. This is not one of those cases. The state is attempting to have you read into the statute a requirement of what the defendant believes, which is not in there, and they are attempting to have you change the plain meaning of what the legislature wrote from procures to hire, enlist, or arrange. That is what the state's argument is. Christian Shepard respectfully requests that you not do that and that you simply apply the language that the legislature wrote. And if you do that, pursuant to the common understanding of what procures means, he did not procure Daniel Robinson to commit murder because Robinson was never willing to do so. If the court has any further questions, I'll be happy to answer them. Thank you for your time. Thank you, counsel. Thank you. Case number 131240, People v. Shepard, is taken under advisement as agenda number three. The court would like to thank the attorneys for their arguments today.